UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SAMUEL L. SMITH | CIVIL ACTION |
| VERSUS | NO. 26-301 |
| DARREL VANNOY, ET AL.[1] | SECTION: "M"(3) |

**REPORT AND RECOMMENDATION**

Samuel L. Smith, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

In November 1994, Smith was charged with first degree murder of J.N. during the perpetration or attempted perpetration of an aggravated rape.[2] After a jury trial, on June 30, 1995, Smith was found guilty of second degree murder.[3] On August 11, 1995, the trial court denied Smith's post-trial motions and sentenced him to a term of life imprisonment at hard labor without the benefit of parole.[4]

---

[1] Petitioner named Burl Cain as a respondent. R. Doc. 5 at 2. The State points out that Darrel Vannoy has served as the Warden of the Louisiana State Penitentiary in Angola, Louisiana, where Smith is incarcerated, since 2024. R. Doc. 15 at 5 n. 2. Warden Vannoy has been substituted automatically as a respondent pursuant to Fed. R. Civ. P. 25(d). The Clerk of Court shall amend the case caption to reflect the above caption.

[2] R. Doc. 16-2 at 110–111, Bill of Indictment, 11/17/94. Although J.N.'s name, as well as the name of a second victim, were published in the indictment and in the state court's appellate opinion, the Court refers to the victims by their initials. *See* La. Rev. Stat. § 46:1844(W)(1)(a).

[3] *Id.* at 101–02, Trial Minutes, 6/30/95; R. Doc. 19-1 at 327, Jury Verdict, 6/30/95.

[4] R. Doc. 16-1 at 5–6, Sentencing Minutes, 8/11/95. On the same day, Smith pled guilty to the attempted second degree murder of D.B. and was sentenced to 15 years at hard labor, to run concurrent with the sentence in this case. *Id.* at 25, Waiver of Constitutional Rights Plea of Guilty, 8/11/95; *id.* at 27–28, Sentencing Minutes in 372-972, 8/11/95.

Smith, through counsel, filed a direct appeal to the Louisiana Fourth Circuit Court of Appeal alleging that the trial court erred in admitting "other crimes" evidence, specifically evidence of the attempted murder of D.B., which occurred two weeks earlier.[5] On May 21, 1997, the court affirmed Smith's conviction and sentence.[6] The Louisiana Supreme Court then denied Smith's related writ application without explanation on November 26, 1997.[7]

On April 6, 1999, Smith filed a motion for new trial and/or reconsideration of sentence.[8] A hearing was held on June 18, 1999, although the outcome is not reflected.[9]

Smith's counsel filed an application for post-conviction relief on June 25, 1999.[10] On April 6, 2000, counsel appeared at a hearing regarding the application for post-conviction relief and a status conference was scheduled for April 28, 2000.[11] The record reflects no further action in the case until April 27, 2009, when Smith filed a motion to quash.[12]

---

[5] R. Doc. 16-2 at 17–25, Appeal Brief, 95-KA-2133, 12/27/96.
[6] *State v. Smith*, 694 So. 3d 1246 (La. App. 5th Cir. 1997); R. Doc. 16-2 at 2–7.
[7] *State v. Smith*, 703 So. 2d 645 (La. 1997); R. Doc. 19-1 at 261–63.
[8] R. Doc. 19-1 at 44–45, Motion and Order for a New Trial and/or Reconsideration of Sentence, undated; *id.* at 27, Minte Entry, 4/5/99.
[9] *Id.* at 3, Chronological History Report entry, 6/18/99.
[10] *Id.* at 26, Minute Entry, 6/25/99; *see id.* at 37, letter from counsel, 11/29/99.
[11] *Id.* at 4, Chronological History Report entry, 4/6/00; *id.* at 7, Docket Master entry, 4/6/00.
[12] *Id.*, Chronological History Report entry, 4/27/09; *id.* at 7, Docket Master entry, 4/27/09.

On March 30, 2021, Smith, through counsel, filed a post-conviction application based on nonunanimous jury verdict.[13] A hearing was held on July 1, 2021, and the matter was continued without date.[14] Nothing in the record reflects whether a ruling was issued on the application.

On April 12, 2024, Smith filed a second or subsequent uniform application for post-conviction relief, claiming the state district court lacked subject matter over his case.[15] On March 28, 2025, the state district court denied relief.[16] On May 21, 2025, the Louisiana Fourth Circuit denied Smith's related writ application on the showing made.[17] On November 25, 2025, the Louisiana Supreme Court denied Smith's related writ application, finding "[t]he application was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies. La.C.Cr.P. art. 930.8; *State ex rel. Glover v. State*, 93-2330 (La. 9/5/95), 660 So.2d 1189."[18]

## I. Federal Petition

On February 4, 2026, Smith filed his federal petition for habeas corpus.[19] Smith claims the existence of a jurisdictional defect.[20]

---

[13] *Id.* at 109–251, Post Conviction Relief Application, 3/29/21; *id.* at 10, Minute Entry, 3/30/21.
[14] *Id.* at 9, Minute Entry, 7/1/21.
[15] *Id.* at 77–93, Second or Subsequent Uniform Application for Postconviction Relief, 4/23/24 (signed 4/12/24).
[16] *Id.* at 68, Minute Entry, 3/28/25.
[17] R. Doc. 16-4 at 28, La. App. 4th Cir. Order, 2025-K-0256, 5/21/25.
[18] *State v. Smith*, 423 So. 3d 74 (La. 2025); R. Doc. 16-4 at 29–30.
[19] R. Doc. 5.
[20] *Id.* at 6, 9, 15; R. Doc. 5-4 at 2–3.

The State asserts that Smith's application is untimely.[21] Alternatively, the State claims Smith's claim is not cognizable and is procedurally barred.[22] Finally, the State asserts that the claim is meritless.[23]

Smith filed a reply brief, although he did not address the State's arguments regarding timeliness, cognizability, and procedural bar.[24]

## II. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, applies to Smith's petition filed in this Court on February 4, 2026. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated, the State claims that the petition should be denied as untimely, and, alternatively, the claim is not cognizable on habeas review, procedurally barred, and meritless. For the following reasons, the petition is indeed untimely and should be dismissed for that reason.

---

[21] R. Doc. 15 at 11–15.
[22] *Id.* at 15–19.
[23] *Id.* at 19–21.
[24] R. Doc. 18.

## III. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsections B, C, and D of 28 U.S.C. § 2244(d)(1) clearly do not apply in the instant case because Smith does not allege the existence of a state-created impediment, a newly recognized constitutional right, or a newly discovered factual predicate. Accordingly, as the State asserts[25] and as Smith does not contest,[26] Subsection A is controlling.

---

[25] R. Doc. 15 at 12–13.

[26] *See* R. Doc. 18.

Regarding Subsection A, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied Smith's direct-review writ application on November 26, 1997.[27] Smith's state criminal judgment became final for federal purposes 90 days later, on February 24, 1998, which was the last date Smith could have sought further review with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510 (5th Cir.1999) (the state court judgment is not final for habeas purposes until the ninety day period for filing a writ of certiorari to the United States Supreme Court has expired); Sup. Ct. R. 13. Accordingly, his period for seeking federal habeas corpus relief commenced on that date and then expired one year later on February 24, 1999, unless that deadline was extended through statutory or equitable tolling.

The Court first considers statutory tolling. Regarding the limitations period set forth in § 2244(d)(1), federal law expressly provides: "The time during which a

[27] *Smith*, 703 So. 2d at 645; R. Doc. 19-1 at 261-62.

properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002); *Williams v. Cain*, 217 F.3d 303, 310 (5th Cir. 2000) (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

Smith had no properly filed state post-conviction or other collateral review related to this case pending in any court to interrupt the running of the AEDPA one-year filing period. The AEDPA limitations period therefore expired on February 24, 1999.

While Smith filed a motion for new trial and/or for reconsideration of sentence on April 6, 1999, and applications for post-conviction relief in June 1999, March 2021, and April 2024, those filings could not revive the one-year federal limitations period which had expired on February 24, 1999. *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013) (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000)); *Magee v. Cain*, No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), *aff'd*, 253 F.3d 702 (5th Cir. 2001) (citing *Williams v. Cain*, No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler*, 533 F.3d at 318.

Nor is Smith is entitled to a re-start of his prescriptive period by virtue of his 2024 post-conviction application. Statutory tolling is triggered only by "a properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). The United States Supreme Court has expressly held that time limits are conditions of filing and, therefore, an untimely state application cannot be deemed "properly filed" for the purposes of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 414 (quotation marks and brackets omitted). As noted, the Louisiana Supreme Court found that Smith's 2024 post-conviction application was untimely filed under La. Code Crim. P. art. 930.8.[28]

The Court next considers equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Yet, "equitable tolling is unavailable in most cases...." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *accord Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that a petitioner is "entitled to equitable tolling only if he shows that (1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). A habeas petitioner bears the

---

[28] *Smith*, 423 So. 3d at 74; R. Doc. 16-4 at 30.

burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

A prisoner's *pro se* status, lack of legal training, ignorance of the law and filing deadlines, and even reliance on inmate counsel do not constitute rare and exceptional circumstances warranting equitable tolling. *See, e.g.*, *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) ("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling."); *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) ("Proceeding *pro se* is alone insufficient to equitably toll the AEDPA statute of limitations."); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

Here, Smith has asserted no reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in this case, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under *McQuiggin v. Perkins*, 569 U.S. 383 (2013).[29]

---

[29] Actual innocence constitutes an "equitable *exception*" to the statute of limitations, rather than an equitable basis on which to toll it. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (emphasis original).

In the instant case, Smith has not invoked *McQuiggin*. In the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has failed to make the showing required under *McQuiggin* for the following reasons.

In assessing a claim of actual innocence, a court normally first examines the evidence presented at trial and on which the petitioner's conviction was based. *See, e.g.*, *Johnson v. Cain*, No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), *aff'd*, 667 F. App'x 474 (5th Cir. 2016); *Lyles v. Tanner*, No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014). Here, Smith was convicted of second degree murder. The Louisiana Fourth Circuit summarized the evidence as follows:

> On January 22, 1994, police officers were summoned to one of the apartments in the Magnolia Housing Project. The door to the apartment was open. On the floor of the bedroom they found the body of a woman nude from the waist down. A piece of necktie was tied around her right wrist, and a separate piece was tied around her left ankle, but neither her legs nor hands were bound. Found on the floor was a towel containing blood and saliva. At this time, the death of the woman was unclassified by the police.
>
> Dr. McGarry who performed an autopsy on the victim testified that the cause of death was asphyxia by forceful smothering. Impressions of the victim's teeth were made on the inside of her lips, and there were symmetrical, deep bruises on the front of her neck and chest. No seminal fluid was found, but bruises inside her vagina and anal canal indicated forceful penetration. The death was classified as a homicide.
>
> The police returned to the apartment and the crime scene technician collected pornographic materials, a sheet and pillowcase, a pair of women's underwear, pieces of two separate neckties, a towel, a pair of black jeans, four unopened condoms, and one empty condom wrapper.
>
> [D.B.] was walking along the sidewalk and saw the police at the defendant's apartment. She was told by a friend that [J.N.] was found

dead in the apartment. Because of her death, [D.B.] decided to inform the police about a previous incident between her and the defendant.

She stated that she knew the defendant and the victim personally having first met the defendant at a girlfriend's house where they got high smoking crack cocaine. She had also accompanied the defendant to his apartment on several occasions to get high.

In January, 1994, she met the defendant at his apartment. Once inside, the defendant locked the door which she thought was unusual because he had never locked the door in the past. He informed her that there were drugs on the table, but what she saw on the table was not cocaine, and she told him. The defendant began strangling [D.B.] saying, "bitch, you're going to die." She managed to pull away from him, but he grabbed her and threw her to the ground. Sometime during the struggle, she broke her arm. The defendant also struck her in the face and ear with his fist. He then dragged her into the bedroom where he began strangling her again. The defendant placed a blanket and pillow over her head. Shortly thereafter, she lost consciousness. When she woke-up, she was naked, and he was gone. The front door of the apartment was left slightly ajar.

She got dressed, but she threw her underwear in the garbage because she felt she had been raped. She went to the hospital for treatment, but she did not say what happened to her or that she may have been raped. Sometime after the incident she saw the defendant. He threatened to finish the job if she told anyone. It was not until after the death of [J.N.] that she told the police what happened to her. She identified defendant in a photographic line-up.

After his arrest defendant gave a statement to the police. He stated that on January 21, 1994, he scored seven rocks of cocaine. He saw [J.N.] and invited her to his apartment where they smoked cocaine and had sex. She had only two rocks and wanted some of his. They began arguing he defendant admitted hitting her and tieing her up with neckties. He also said he placed a rag over her mouth to keep her quiet. Because he was loaded, he could not remember whether he strangled her or whether he had sex with her after he tied her up. He then left the apartment. The defendant stated that he thought she would untie herself and leave. When he returned sometime later and saw her still there, he became scared and ran.[30]

[30] R. Doc. 16-2 at 3–5, La. App. 4th Cir Opinion, 95-KA-2133, 5/21/97.

At the next step of an "actual innocence" analysis, a federal court then considers the **new** evidence of **actual innocence** offered by the habeas petitioner. Specifically, the United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Smith has presented no new evidence whatsoever relating to his factual innocence on the underlying crime to which he was found guilty. Without such evidence, he simply cannot meet even "the threshold requirement" for *McQuiggin* to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). Accordingly, *McQuiggin* does not aid him.

## RECOMMENDATION

It is therefore **RECOMMENDED** that Samuel L. Smith's application be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 27th day of July, 2026.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**